**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-02055-NYW-NRN

LANCE REYNOLDS,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant United States' Motion for Summary Judgment (or "Motion"). [Doc. 152]. The Court has reviewed the Motion and concludes that oral argument would not materially assist in its resolution. For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiff Lance Reynolds ("Plaintiff" or "Mr. Reynolds") is currently in the custody of the Federal Bureau of Prisons ("BOP"). *See* [Doc. 76 at ¶ 13]. He alleges that, on June 28, 2021, he was assaulted by correctional officers, [*id.* at ¶¶ 11–18], and on August 12, 2022, he filed this lawsuit as a result, *see* [Doc. 1].

In his Second Amended Complaint, Mr. Reynolds asserts four claims under the Federal Tort Claims Act ("FTCA") against the United States (or "Defendant"): (1) assault; (2) battery; (3) negligence; and (4) intentional infliction of emotional distress (or "IIED"). *See* [Doc. 76]. In 2024, Judge Neureiter recommended that Plaintiff's negligence claim,

to the extent it raised a theory of medical negligence, be dismissed, *see generally* [Doc. 123], and this Court adopted that recommendation, *see* [Doc. 129 at 14 & n.5 (dismissing medical negligence claim and stating that "to the extent Plaintiff brings a negligence claim based on the assault, . . . that claim remains")].  In November 2024, pro bono counsel entered an appearance on Mr. Reynolds's behalf, *see* [Doc. 132], and Plaintiff has been represented by counsel ever since.

The United States now moves for summary judgment on Plaintiff's remaining four claims.  [Doc. 152].

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

At summary judgment, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once this movant has met its initial burden, the burden then shifts to the nonmoving party

to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See id.* at 249; *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The following undisputed material facts are drawn from the summary judgment record.

1.    On June 28, 2021, Plaintiff "had an encounter" with BOP Correctional Officer Jeremy Wilcox and BOP Correctional Officer Austin Walters-Tracy. [Doc. 152 at ¶ 15; Doc. 155 at 3 ¶ 15; Doc. 152-1 at ¶ 16; *id.* at 73].

2.    Mr. Reynolds filed an administrative tort claim (the "Administrative Claim") after the incident. [Doc. 152 at ¶¶ 33–34; Doc. 155 at 4 ¶¶ 33–34; Doc. 152-2 at ¶ 5; *id.* at 7–9].[1]

3.    In the Administrative Claim, Plaintiff stated that he was stopped by Officers Wilcox and Walters-Tracy and "pushed against the fence[,] picked up, and slammed by both officers on compound at base of main walkway stairs. [He] was slammed so violently

---

[1] The Parties dispute whether the Administrative Claim was the only claim filed, as Plaintiff testified at his deposition that he submitted another claim. [Doc. 152-3 at 84:16–85:1]. The Court observes that, elsewhere, Plaintiff admits that aside from the Administrative Claim and a later amendment, "BOP did not receive any other materials from Plaintiff" for the Claim. [Doc. 152 at ¶ 45; Doc. 155 at 4 ¶ 45]. No Party has submitted any other claim as summary judgment evidence, and in any event, this dispute is not material to the Court's analysis.

that [he] became [temporarily] paralyzed for 8 hours as [he] was lying in restraints in the SHU."  [Doc. 152 at ¶ 35; Doc. 155 at 4 ¶ 5; Doc. 152-2 at 7].

4.      After and as a result of his encounter with Officers Wilcox and Walters-Tracy, Plaintiff was charged in an incident report with "Assaulting Without Serious Injury." [Doc. 152 at ¶ 16; Doc. 155 at 3 ¶ 16; Doc. 152-1 at ¶ 16; *id.* at 73].

5.      The incident report stated that Mr. Reynolds became "verbally aggressive" towards Officers Wilcox and Walters-Tracy and "stepped towards Officer Wilcox and got in his face."  [Doc. 152 at ¶ 17; Doc. 155 at 3 ¶ 17; Doc. 152-1 at 73].  The incident report further stated that Officer Wilcox "attempted [to] place" Mr. Reynolds against a fence, but Plaintiff tried to "spin to pull away," so Officer Wilcox "placed" Plaintiff "on the ground with the amount of force necessary to regain control of the situation."  [Doc. 152 at ¶¶ 18–19; Doc. 155 at 3 ¶¶ 18–19; Doc. 152-1 at 73].

6.      The incident report also stated that Officer Walters-Tracy grabbed Plaintiff's leg to assist Officer Wilcox, and when he was doing so, Plaintiff elbowed Officer Walters-Tracy in the face.  [Doc. 152 at ¶ 21; Doc. 155 at 3 ¶ 21; Doc. 152-1 at 73].

7.      A disciplinary hearing officer ("DHO") later concluded that Mr. Reynolds committed the act of Assaulting Without Serious Injury and imposed the following sanctions:  disallowance of 27 days' worth of good conduct time, segregation for seven days, and loss of commissary and visiting privileges for 90 days.  [Doc. 152 at ¶¶ 29, 32; Doc. 155 at 3 ¶¶ 29, 32; Doc. 152-1 at 78–80].

8.      In this case, Plaintiff asserts claims based on the alleged conduct of Officer Wilcox, Officer Walters-Tracy, an unnamed BOP officer, and "all BOP staff" generally. [Doc. 152 at ¶ 4; Doc. 155 at 3 ¶ 4; Doc. 76 at ¶¶ 33–44].

9.      With respect to Officer Walters-Tracy, Plaintiff's negligence claim is based on allegations that Officer Walters-Tracy watched Officer Wilcox assault Plaintiff and did not intervene.  [Doc. 152 at ¶ 6; Doc. 155 at 3 ¶ 6; Doc. 76 at ¶¶ 16, 40].

10.      The Administrative Claim does not state that Officer Walters-Tracy watched while Officer Wilcox assaulted Plaintiff or that Officer Walters-Tracy failed to intervene. [Doc. 152 at ¶ 39; Doc. 155 at 4 ¶ 39; Doc. 152-2 at 7–26].

11.      With respect to the unnamed BOP officer, Plaintiff's assault and battery claims are based on allegations that the BOP officer grabbed Plaintiff, dragged him up three flights of stairs, and threw him in a wheelchair.  [Doc. 152 at ¶ 7; Doc. 155 at 3 ¶ 7; Doc. 76 at ¶¶ 18, 35, 38].

12.      The Administrative Claim does not mention a BOP officer dragging Plaintiff up flights of stairs or throwing him into a wheelchair.  [Doc. 152 at ¶ 38; Doc. 155 at 4 ¶ 38; Doc. 152-2 at 7–26].

13.      With respect to BOP staff generally, Plaintiff's negligence claim is based on allegations that BOP staff failed to intervene when the unnamed BOP officer dragged him up the stairs and threw him into a wheelchair.  [Doc. 152 at ¶ 8; Doc. 155 at 3 ¶ 8; Doc. 76 at ¶ 41].

14.      The Administrative Claim does not mention that any BOP staff member failed to intervene when the unnamed BOP officer dragged Plaintiff or threw him into a wheelchair.  [Doc. 152 at ¶ 40; Doc. 155 at 4 ¶ 40; Doc. 152-2 at 7–26].

15.      On February 14, 2022, Plaintiff filed an amendment to the Administrative Claim to include additional medical records.  [Doc. 152 at ¶¶ 41–42; Doc. 155 at 4 ¶¶ 41–

42; Doc. 152-2 at 29–32]. The amendment did not add any factual allegations. [Doc. 152 at ¶ 44; Doc. 155 at 4 ¶ 44; Doc. 152-2 at 29–32].

16.    Aside from the Administrative Claim and the amendment, "the BOP did not receive any other materials from Plaintiff" regarding the Claim. [Doc. 152 at ¶ 45; Doc. 155 at 4 ¶ 45; Doc. 152-2 at ¶ 13].

17.    The Administrative Claim was denied and closed on March 23, 2022. [Doc. 152 at ¶ 46; Doc. 155 at 4 ¶ 46; Doc. 152-2 at ¶ 14; Doc. 152-2 at 34].

## ANALYSIS

The United States argues that it is entitled to summary judgment on all of Plaintiff's claims. First, it contends that "[a]ll of Plaintiff's remaining claims except for his claims for assault, battery, and IIED [related to] Officer Wilcox" should be dismissed because Plaintiff failed to exhaust his administrative remedies as to those claims. [Doc. 152 at 9 (emphasis omitted)].[2] Then, it contends that "Plaintiff's remaining claims—for assault, battery, and IIED [related to] Officer Wilcox"—are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). [Doc. 152 at 13 (emphasis omitted)].

---

[2] The Court construes this argument to address (1) the portion of Plaintiff's assault claim based on the unnamed officer dragging Plaintiff up the stairs and throwing him into a wheelchair, [Doc. 76 at ¶ 35]; (2) the portion of Plaintiff's battery claim based on the unnamed officer dragging Plaintiff up the stairs and throwing him into a wheelchair, [*id.* at ¶ 38]; (3) the portion of Plaintiff's negligence claim based on Officer Walters-Tracy failing to intervene in Officer Wilcox's alleged assault, [*id.* at ¶ 40]; and (4) the portion of Plaintiff's negligence claim based on "all BOP Staff" failing to intervene in Officer Wilcox's alleged assault, [*id.* at ¶ 41].

**I.    Administrative Exhaustion**

The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  In other words, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993).  "This exhaustion requirement is 'jurisdictional and cannot be waived.'" *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (quoting *Bradley v. U.S. ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)).

The FTCA's notice requirement requires the claimant to present to the appropriate federal agency "(1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum certain in damages." *Id.*  The claim need not state legal theories or the "exact grounds upon which [the] plaintiff seeks to hold the government liable," but it must give "notice of the facts and circumstances underlying a claim." *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 853 (10th Cir. 2005).  Courts should "liberally construe the universe of facts that the FTCA claimant provides," but should not "augment those facts to conform to the claimant's subsequent civil complaint." *Benally v. United States*, 735 F. App'x 480, 485 (10th Cir. 2018).  Whether a plaintiff has satisfied the FTCA's notice requirement is a question of law. *Staggs v. U.S. ex rel. Dep't of Health & Hum. Servs.*, 425 F.3d 881, 884 (10th Cir. 2005).

Defendant argues that Plaintiff failed to exhaust his administrative remedies for a majority of his claims because the Administrative Claim did not mention "Plaintiff's allegations that an unnamed BOP officer dragged him up three flights of stairs and threw him in a wheelchair, that BOP staff generally failed to intervene when this happened, and that Officer Walters-Tracy stood by and failed to intervene when Officer Wilcox assaulted Plaintiff." [Doc. 152 at 11 (quotation omitted)]. Therefore, Defendant argues, the Administrative Claim did not "notify the BOP of the need to investigate these other wrongful acts by these other staff members and thus deprived the agency of the opportunity to potentially resolve the claims through the administrative tort process." [*Id.* at 11–12].

Mr. Reynolds responds that his Administrative Claim satisfies the FTCA's notice requirement because it "describ[ed] that Officers Wilcox and Walters-Tracy slammed him to the ground, causing a serious back injury, and [sought] $250,000 in damages." [Doc. 155 at 8 (cleaned up)]. He argues that the FTCA notice requirement should be construed liberally and deemed satisfied "so long as it alerts the agency to the incident and resulting injury." [*Id.* at 8–9]. In his view, because the Administrative Claim "described the same operative facts that form the basis of" his claims in this case—i.e., "the June 28, 2021 use-of-force incident and resulting injury"—the allegations in the Administrative Claim "inherently encompass negligence theories such as negligent supervision, negligent failure to intervene, and negligent use of force." [*Id.* at 9].

The Court is respectfully unpersuaded by Plaintiff's argument. First, with respect to Mr. Reynolds's assault and battery claims based on an unnamed BOP officer dragging Plaintiff up three flights of stairs and throwing him into a wheelchair, neither the

Administrative Claim nor the amendment mentions any of this conduct at all.  *See* [Doc. 152-2 at 7–9, 29–32].  And to the extent Plaintiff brings a claim based on "all BOP Staff" failing to intervene in Officer Wilcox's alleged assault, the Administrative Claim does not mention that any other BOP staff members (other than Officer Walters-Tracy) were present during the alleged assault or suggest that any staff members failed to intervene. *See* [*id.*].  Indeed, tellingly, Plaintiff does not try to argue in his response brief that he administratively exhausted any such claims.  *See* [Doc. 155 at 8–9].  Therefore, the Administrative Claim does not provide "notice of the facts and circumstances underlying" these portions of Plaintiff's claims, see *Est. of Trentadue*, 397 F.3d at 853, and does not provide sufficient information to "allow the agency to begin an investigation into the possibility of potentially tortious conduct," *Lopez*, 823 F.3d at 976.

As for the negligence claim based on Officer Walters-Tracy's alleged failure to intervene, Mr. Reynolds essentially argues that because the Administrative Claim briefly described the underlying incident, he necessarily exhausted his administrative remedies for *any* potential claim or theory of liability that could arise from the incident, regardless of the facts alleged in the Administrative Claim.  *See* [Doc. 155 at 8–9 (asserting that his description of the "operative facts" "inherently encompass[es] negligence theories")]; *see also* [*id.* at 6–7 (arguing that the Administrative Claim "gave the BOP full notice to investigate not only intentional assault but also potential . . . negligent failure to intervene").[3]  This argument is inconsistent with the purpose of the exhaustion

---

[3] Plaintiff also argues that the Administrative Claim gave the BOP notice of potential claims for "negligent supervision" and "negligent use of force."  [Doc. 155 at 7]; *see also* [*id.* at 9].  But his negligence claim does not allege that Officer Walters-Tracy engaged in "negligent use of force" or failed to supervise Officer Wilcox (or any other BOP employee).  Rather, Mr. Reynolds alleges that "[Officer Walters-Tracy] stood by and did nothing while

requirement, which is to provide the agency "*due notice* that the agency should investigate the possibility of *particular* (potentially tortious) conduct."  *Est. of Trentadue*, 397 F.3d at 852 (emphasis added and quotation omitted).

The Administrative Claim does not contain information that would allow the BOP to investigate Officer Walters-Tracy's alleged failure to intervene because it does not contain allegations even suggesting that Officer Walters-Tracy failed to intervene.  In fact, it alleges the opposite, describing Officer Walters-Tracy only as an active participant in the alleged assault:  "I was stopped by C.O. Wilcox [and] CO Walters-Tracy . . . .  I was . . . pushed against the fence[,] picked up, and slammed <u>by both officers</u> on compound at base of main walkway stairs."  [Doc. 152-2 at 7 (emphasis added)].  At best, these allegations would trigger an investigation into Officer Walters-Tracy's alleged physical assault of Plaintiff, not his alleged failure to intervene in Officer Wilcox's conduct.

---

[Officer] Wilcox proceeded to break the Plaintiff's back, thereby failing in his duties."  [Doc. 76 at ¶ 40]; *see also* [*id.* at ¶ 16 ("Plaintiff noticed that the entire time this was going on and happening, [Officer Walters-Tracy] had just been standing by watching.")]; *see also* [Doc. 152 at ¶ 6; Doc. 155 at 3 ¶ 6 (Plaintiff agreeing that it is undisputed that "[a]s to Officer Walters-Tracy, Plaintiff's negligence claim is based on allegations that Officer Walters-Tracy watched this happen and did not intervene")].  Although the Second Amended Complaint was filed by Plaintiff when he was unrepresented and is thus entitled to a liberal construction, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), the Court cannot act as Plaintiff's advocate and cannot assume the existence of allegations or theories not contained in the Second Amended Complaint, *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998); *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) ("This court . . . will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf.").  And Plaintiff's counsel did not move to amend the Second Amended Complaint to assert or develop any additional negligence theories.  Because the Second Amended Complaint— even construed liberally—does not assert any theories of negligent supervision or "negligent use of force," the Court's analysis is limited to the negligence claim based on Officer Walters-Tracy's alleged failure to intervene.

"[A]n administrative claim must fairly apprise the United States of the grounds for its potential liability so that it may properly investigate and adjudicate the claim." *Gonzagowski v. United States*, 495 F. Supp. 3d 1048, 1107 (D.N.M. 2020). Because the Administrative Claim contains no allegations about Office Walters-Tracy's alleged failure to intervene, it did not "give notice of the underlying facts and circumstances that . . . form the fabric of" Plaintiff's negligence claim related to Officer Walters-Tracy, *Benally*, 735 F. App'x at 485, and did not fairly apprise the United States of the grounds for its potential liability arising out of Officer Walters-Tracy's allegedly negligent conduct, *see Sharp v. United States*, No. 1:23-cv-00478, 2025 WL 973616, at *4 (S.D.W. Va. Mar. 31, 2025) (dismissing failure-to-intervene claim where the FTCA notice "[did] not allege failure to intervene by executive staff"); *cf. Bradley ex rel. King v. United States*, No. 16-cv-01435-EFM-TJJ, 2017 WL 4310224, at *6 (D. Kan. Sept. 28, 2017) (concluding that the plaintiff failed to exhaust administrative remedies where the administrative claim did not indicate that the defendants "failed to instruct, supervise, train, or control correctional officers" and "nothing in the [claim] mention[ed] the possibility that [the plaintiff's] injuries were caused by inadequate training and supervision of [prison] staff"). Accordingly, the Court agrees with the United States that Plaintiff did not administratively exhaust his negligence claim to the extent it is based on Officer Wilcox's alleged failure intervene.

For the reasons set forth above, the Court concludes as a matter of law that Plaintiff did not exhaust his administrative remedies with respect to (1) the portion of Plaintiff's assault claim based on the unnamed officer dragging Plaintiff up the stairs and throwing him into a wheelchair, [Doc. 76 at ¶ 35]; (2) the portion of Plaintiff's battery claim based on the unnamed officer dragging Plaintiff up the stairs and throwing him into a wheelchair,

[*id.* at ¶ 38]; (3) the portion of Plaintiff's negligence claim based on Officer Walters-Tracy

failing to intervene in Officer Wilcox's alleged assault, [*id.* at ¶ 40]; and (4) the portion of

Plaintiff's negligence claim based on "all BOP Staff" failing to intervene in Officer Wilcox's

alleged assault, [*id.* at ¶ 41].  The Court thus lacks subject matter jurisdiction over those

portions of Plaintiff's claims, and the Motion for Summary Judgment is **GRANTED** with

respect to those claims.

## II.    The Assault, Battery, and IIED Claims Based on Officer Wilcox's Conduct

Next, the United States argues that Plaintiff's remaining claims are barred by *Heck*

*v. Humphrey* and *Edwards v. Balisok*.  [Doc. 152 at 12].

In *Heck v. Humphrey*, the Supreme Court held that

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87.[4]  "The purpose behind *Heck* is to prevent litigants from using a [civil]

action, with its more lenient pleading rules, to challenge their conviction or sentence

without complying with the more stringent exhaustion requirements for habeas actions."

---

[4] The Tenth Circuit has applied *Heck* to claims asserted under the FTCA.  *See Parris v. United States*, 45 F.3d 383, 385 (10th Cir. 1995) ("The FTCA, like § 1983, creates liability for certain torts committed by government officials.  As such, we conclude the same common law principles that informed the Supreme Court's decision in Heck should inform the decision of whether an action under the FTCA is cognizable when it calls into question the validity of a prior conviction.").

*Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007) (citing *Muhammad v. Close*, 540 U.S. 749, 751–52 (2004) (per curiam)).

"The assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Muhammad*, 540 U.S. at 752 n.1. But in *Edwards v. Balisok*, the Supreme Court extended *Heck*'s reach to bar a prisoner's due-process challenge to an prison disciplinary ruling that deprived him of good time credits. 520 U.S. at 648. In that case, the prisoner argued that the procedures used in the disciplinary proceeding violated his due process rights because the hearing officer withheld exculpatory evidence. *Id.* at 644. Because success on the due process claim "would . . . necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits," his claim for declaratory relief and money damages was not cognizable. *Id.* at 648.

But *Heck* does not apply "categorically to all suits challenging prison disciplinary proceedings." *Muhammad*, 540 U.S. at 754. "*Heck* applies only to claim that could 'be construed as seeking a judgment at odds with' the plaintiff's underlying criminal conviction 'or with the . . . calculation of time to be served in accordance with the underlying sentence.'" *Buchanan v. Alsip*, No. 1:24-cv-00036-JMS-KMB, 2024 WL 4605278, at *2 (S.D. Ind. Oct. 29, 2024) (quoting *Muhammad*, 540 U.S. at 754); *see also Georges v. N.J. Dep't of Corr.*, No. 22-cv-05559-JXN-JRA, 2023 WL 3200101, at *3 (D.N.J. May 2, 2023) ("Under *Muhammad*, *Heck* does not bar a prisoner's § 1983 suit when a favorable verdict would not affect his conviction or the duration of his sentence.").

13

The United States contends that Plaintiff's remaining claims are barred by *Heck* because a judgment in Plaintiff's favor "would necessarily imply the invalidity of the DHO's findings" in Plaintiff's disciplinary conviction for Assault Without Serious Injury. [Doc. 152 at 15 (emphasis omitted)]. Defendant asserts that Plaintiff's "theory of his claims . . . is based on his innocence" in the encounter with the Officers and that this position is inconsistent with the DHO's findings. [*Id.* at 17]; *see also* [*id.* at 19 ("At their core, Plaintiff's allegations here are that *any* amount of force was unjustified because Plaintiff did nothing wrong.")]. Defendant's argument rests on its position that the DHO found (1) "that Plaintiff was at fault and committed assault on Officer Walters-Tracy," and (2) Officer Wilcox and Officer Walters-Tracy "were using 'the amount of force necessary to regain control of the situation' at the point when Plaintiff assaulted Officer Walters-Tracy." [*Id.*]. The United States contends that these purported findings directly contradict Mr. Reynolds's allegations in this case, so *Heck* and *Edwards* bar Plaintiff's tort claims. [*Id.* at 15–20].

This argument, however, rests on an incorrect premise and is contrary to the contents of the DHO report. The DHO report does *not* contain any express finding that Officer Wilcox and/or Officer Walters-Tracy used only "the amount of force necessary to regain control of the situation." While the section of the DHO report titled "Specific Evidence Relied On to Support Findings" reflects (1) that the "incident report writer" (i.e., Officer Walters-Tracy) stated in the incident report that "Officer Wilcox placed the Inmate on the ground with the amount of force necessary to regain control of the situation," and (2) that "[t]he [Unit Disciplinary Committee [('UDC')] noted . . . Officer Wilcox placed the inmate on the ground with the amount of force necessary to regain control of the

14

situation," [Doc. 152-1 at 73, 78–79 (capitalization altered)], the DHO draws no conclusion about the propriety of the force used by either Officer Wilcox or Officer Walters-Tracy. Indeed, the DHO simply copied and pasted Officer Walters-Tracy's incident report statement and the UDC committee decision (which itself copied and pasted Officer Walters-Tracy's statement), *see* [*id.* at 74], into the DHO report, setting those statements off with quotation marks, *see* [*id.* at 78–79].[5]  Instead, the DHO concluded:

> The DHO finds you committed the prohibited act of Code 299 Disruptive Behavior, most like Code 224, Assault when you became verbally aggressive by yelling at staff and not following directions, you were in staffs face when they attempted to place you in hand restraints you spun and pulled away from them, when staff were attempting to place you in restraints you elbowed a staff member in the face [sic].

[*Id.* at 78].

Mr. Reynolds argues that his claims are not barred by *Heck* because success on his claims "would not disturb the validity of the DHO's conclusion that Plaintiff was verbally aggressive or resisted staff."  [Doc. 155 at 11].  He "does not deny that the DHO found him guilty of assault or disruptive conduct," but he argues that the DHO did not, and could

---

[5] Attached to its Motion for Summary Judgment, the United States submits a declaration from the DHO in which the DHO states that he "found that the officers placed Plaintiff on the ground with only the amount of force necessary to regain control of the situation" and that this finding "was central to [his] finding that Plaintiff committed the prohibited act of Assaulting Without Serious Injury."  [Doc. 152-1 at ¶ 23].  But that is not reflected in his conclusion contained in the contemporaneous report, which is focused on Mr. Reynolds's conduct.  *See* [*id.* at 78–79].  And in any event, the declaration does not materially change this Court's below analysis that Plaintiff's allegations are not inherently inconsistent with the DHO findings and success on Plaintiff's claims would not necessarily imply the invalidity of Plaintiff's disciplinary conviction.  It is unclear how the DHO would be required to weigh whether Officer Wilcox's response was appropriate when Plaintiff acted first, as opposed to a situation where the inmate's conduct was in response to that of correctional officers, e.g., justifiable self-defense.

not, determine whether Officer Wilcox's response was violative of Colorado tort law.[6]  [*Id.* at 10, 12].  Because the DHO finding that Plaintiff was aggressive and guilty of assault can "coexist" with a jury finding that Mr. Wilcox committed assault, battery, and IIED during his interaction with Plaintiff, Mr. Reynolds contends that his claims are not barred by *Heck*.  [*Id.* at 12].

The Court respectfully agrees with Mr. Reynolds on this point.  "In determining whether a claim is barred by *Heck*, the Court must compare the factual basis for the lawsuit with the essential facts supporting the disciplinary decision to see whether they are inconsistent with each other."  *Houck v. USA*, No. 16-cv-01268-JPG-SCW, 2018 WL 4590003, at *2 (S.D. Ill. Sept. 25, 2018) (citing *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016)).  Through that comparison, the Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his [disciplinary conviction]; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Heck*, 512 U.S. at 487.  But if the Court finds that "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  *Id.*

---

[6] The FTCA allows claims against the government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  So in this case, Colorado state law governs substantive liability.  *See Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014); *see also Martin v. United States*, 605 U.S. 395, 409–10 (2025) ("[A] plaintiff may generally prevail in an FTCA suit by demonstrating that 'the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward.'" (quoting *Carlson v. Green*, 446 U.S. 14, 23 (1980)).

"The *Heck* analysis requires a close factual examination of the underlying [disciplinary conviction]." *Riddick v. Lott*, 202 F. App'x 615, 616 (4th Cir. 2006). The DHO found Plaintiff guilty of Assaulting Without Serious Injury because he "became verbally aggressive by yelling at staff and not following directions," was "in staff[']s face," he "spun and pulled away from" staff when they "attempted to place [him] in hand restraints," and he "elbowed a staff member in the face." [Doc. 152-1 at 78]. In other words, Plaintiff's disciplinary conviction is based on his resistance against Officer Wilcox's attempts to restrain him. [*Id.*]. As for Plaintiff's allegations in this lawsuit, Mr. Reynolds claims that Officer Wilcox "let[] [him] go so that [Plaintiff fell] sideways onto his side." [Doc. 76 at ¶ 13]. When Plaintiff "[went] to get up," Officer Wilcox "grab[bed] [P]laintiff around the knees and lift[ed] him straight up into the air and then intentionally slam[med] him to the ground on his back." [*Id.* at ¶ 14]. Said differently, Mr. Reynolds alleges that Officer Wilcox engaged in a distinct instance of unlawful force or contact during a point in their encounter in which Mr. Reynolds was not actively resisting. This alleged conduct forms the basis of Mr. Reynolds's remaining assault, battery, and IIED claims. *See* [*id.* at ¶¶ 34, 37, 44].

To prevail on his assault claim, Plaintiff must prove (1) Officer Wilcox intended to make offensive or physical contact with Mr. Reynolds or intended to place Mr. Reynolds in apprehension of such contact; (2) Officer Wilcox did place Mr. Reynolds in apprehension of immediate physical contact; and (3) the contact "was or appeared to be harmful or offensive." *Rubbani v. Bronaugh*, No. 16CA0367, 2017 WL 11932155, at *4 (Colo. App. July 20, 2017). "The elements of battery are similar, except that the contact must have actually resulted." *Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1198 (Colo.

17

App. 2008); *see also Rubbani*, 2017 WL 11932155, at *4.  And to succeed on his IIED claim, Mr. Reynolds must demonstrate that (1) Officer Wilcox engaged in extreme and outrageous conduct; (2) Officer Wilcox "did so recklessly or with the intent of causing [Plaintiff] severe emotional distress," and (3) Officer Wilcox's conduct actually did cause Plaintiff severe emotional distress.  *Stalder v. Colorado Mesa Univ.*, 551 P.3d 679, 686 (Colo. App. 2024).

Upon review of the DHO's findings, Plaintiff's present allegations, and the elements of his remaining claims, the Court concludes that success on any of Plaintiff's three claims would not "*necessarily* imply the invalidity" of his disciplinary conviction.  *Heck*, 512 U.S. at 487 (emphasis added).  The elements of Plaintiff's three claims are not incompatible with the DHO's findings or determination; indeed, it is conceivable that a prison guard could make harmful, offensive, or outrageous physical contact (e.g., by lifting and slamming an inmate) when attempting to restrain the inmate who has himself separately engaged in assaultive conduct (e.g., by yelling at staff or aggressively resisting restraints). *See Shapard v. Attea*, 710 F. App'x 15, 17 (2d Cir. 2017) (finding that *Heck* did not apply where the elements of the plaintiff's excessive force claim were "not incompatible" with the elements of plaintiff's assault conviction).  Courts in analogous cases have concluded similarly.[7]   *See, e.g.*, *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008) ("[The plaintiff's] convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to [the plaintiff's] unlawful actions."); *Sharif v. Picone*, 740 F.3d 263, 270 (3d

---

[7] Few cases address *Heck*'s application to assault or battery claims under the FTCA. Accordingly, the Court relies on factually analogous cases addressing *Heck*'s application to excessive force claims.

18

Cir. 2014) ("Regardless of whether he engaged in assaultive conduct, [the plaintiff] remains free to contend that the reaction of the corrections officers was such that it constituted excessive force in comparison to the threat he posed."); *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest "does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'"); *Dabney v. Pegano*, No. 9:10-cv-01109-GTS-TWD, 2013 WL 5464776, at *19 (N.D.N.Y. Sept. 30, 2013) ("Because it is possible for a fact finder to accept the validity of Plaintiff's [assault] disciplinary convictions and still conclude that Defendants . . . used excessive force, Plaintiff's excessive force claim does not necessarily imply the invalidity of his convictions." (cleaned up)), *aff'd*, 604 F. App'x 1 (2d Cir. 2015). The Court is thus respectfully unpersuaded by Defendant's insistence that Plaintiff's remaining claims in this case "directly contradict" the DHO report, [Doc. 152 at 17; Doc. 161 at 9], or otherwise attack the legitimacy of the DHO's findings.[8]

Courts faced with similar circumstances have rejected the same type of *Heck*-based argument Defendant raises here. For example, in *Pullen v. Howard*, after an altercation with prison guards, the plaintiff was charged and convicted in prison disciplinary proceedings with, inter alia, physical resistance to a direct order. *See* No.

---

[8] As mentioned above, Defendant argues that Plaintiff's claims, as asserted in the Second Amended Complaint, "are based on his alleged innocence" in the underlying assault infraction because "he does not allege that he disobeyed orders or acted aggressively" in his interaction with Officer Wilcox. [Doc. 161 at 9]. Defendant does not cite any legal authority suggesting that Plaintiff must assert any such allegations to avoid application of *Heck*, *see* [*id.*], especially when Plaintiff filed his Second Amended Complaint pro se, *cf. Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (recognizing that a "prisoner can remain 'agnostic' in his civil rights case about the findings in the criminal (or disciplinary) proceeding; he doesn't have to confess").

2:14-cv-00104, 2016 WL 4764894, at *4–5 (S.D. Ohio Sept. 13, 2016), *recommendation adopted*, 2017 WL 44855 (S.D. Ohio Jan. 3, 2017).  The plaintiff subsequently brought excessive force claims against the guards based on that altercation.  *Id.* at *5, *11.  The magistrate judge recommended rejecting the guards' argument that the claims were barred by *Heck*.  *Id.* at *11.  In her recommendation, she reasoned that the excessive force claims did not necessarily imply the invalidity of the plaintiff's disciplinary conviction because whether the plaintiff resisted a direct order was "analytically distinct from whether the [guards] responded with excessive force."  *Id.*  And for that reason, the disciplinary conviction "[did] not necessarily compel the conclusion that the responding officers did not employ excessive force."  *Id.*

Similarly, in *Collins v. Kurgan*, the plaintiff brought excessive force claims arising out of an altercation with correctional officers.  *See* No. 2:23-cv-01600-CSK-P, 2025 WL 3514159, at *1 (E.D. Cal. Dec. 8, 2025), *recommendation adopted*, 2026 WL 1399477 (E.D. Cal. May 19, 2026).  The plaintiff alleged that one of the officers handcuffed him against the wall and then "threw [him] to the floor"; the officer claimed that the plaintiff was "erratic," "thrashing," and had kicked him.  *Id.* at *1, *3.  The defendants argued that the plaintiff's excessive force claims were barred by *Heck* because the plaintiff had been convicted of battery on a police officer and willfully resisting a peace officer.  *Id.* at *6. The magistrate judge was unconvinced by this argument, reasoning that "[e]ven if plaintiff battered [the correctional officer], plaintiff could pursue the legal theory that the force applied by defendants in response to the battery was excessive and unnecessary and was applied maliciously and sadistically for the purpose of causing harm to plaintiff."  *Id.*; *see also Johnson v. N.J. Dep't of Corr.*, No. 11-cv-05764-RMB-JS, 2015 WL 5603630, at

20

*3 (D.N.J. Sept. 23, 2015) (finding *Heck* inapplicable because even though there was "overlap" between the plaintiff's excessive force claim and the plaintiff's assault conviction in prison disciplinary proceedings, "that overlap would not speak to the propriety of the [disciplinary] hearing officer's procedures or attack the legitimacy of the hearing officer's legal determination" (quotation omitted)); *Shelton v. Chorley*, No. 1:07-cv-00560-MHM, 2011 WL 1253655, at *4 (E.D. Cal. Mar. 31, 2011) ("[I]t is possible that Plaintiff attempted to batter Defendant *and* that Defendant used excessive force in subduing Plaintiff."), *aff'd*, 487 F. App'x 388 (9th Cir. 2012); *Casey v. Brockley*, No. 9:13-cv-01271-DNH-TWD, 2018 WL 1399244, at *5 (N.D.N.Y. Feb. 16, 2018) (concluding that the plaintiff's disciplinary convictions for violent conduct and assault on staff did not "preclude a finding that the corrections officers also used excessive force against [the plaintiff] during this incident"), *recommendation adopted*, 2018 WL 1393787 (N.D.N.Y. Mar. 19, 2018).

In line with these cases, the Court concludes that a judgment in Mr. Reynolds's favor on his assault, battery, and/or IIED claims would not necessarily conflict with the DHO's findings and would necessarily imply the invalidity of his disciplinary conviction. For this reason, *Heck* and its progeny do not bar Plaintiff's battery, assault, or IIED claims based on Officer Wilcox's alleged conduct, and the action should proceed. *Heck*, 512 U.S. at 487. To the extent Defendant seeks summary judgment on these remaining claims, the Motion for Summary Judgment is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)   Defendant United States' Motion for Summary Judgment [Doc. 152] is **GRANTED in part** and **DENIED in part**; and

(2)     A Telephonic Status Conference is **SET** for **September 1, 2026 at 11:00 A.M.** to set the Final Pretrial/Trial Preparation Conference and trial in this case.   Counsel for the Parties shall participate using the following dial-in information:  **571-353-2301; Access Code:  783456374**.

DATED:  August 3, 2026                                      BY THE COURT:

_____
Nina Y. Wang
United States District Judge

22